UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PAUL E. GIPP,

          **Plaintiff,**

v.

          18-CV-464-HKS

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          **Defendant.**

## DECISION AND ORDER

Plaintiff Paul Gipp brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of Acting Commissioner of Social Security (the "Commissioner"), which denied his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Act. Dkt. No. 1. This Court has jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to the disposition of this case by a United States magistrate judge pursuant to 28 U.S.C. § 636(c). Dkt. No. 19.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Dkt. Nos. 11, 17. For the reasons set forth below, Plaintiff's motion is granted, and the defendant's motion is denied.

## BACKGROUND

On October 9, 2014, the plaintiff protectively filed applications for DIB and SSI with the Social Security Administration ("SSA") alleging disability since January 1,

1

2014, due to Bipolar Disorder; Arthritis; Spinal Stenosis; Hypothyroidism; Borderline Personality Disorder; Attention Deficit Hyperactive Disorder; and High Cholesterol. Tr.[1] 269. On May 13, 2015, the SSA denied Plaintiff's claims at the initial level. Tr. 127-28. On April 3, 2017, the plaintiff appeared and testified before Administrative Law Judge, Stephen Cordovani ("the ALJ"). Tr. 38-91. A vocational expert ("VE") also testified during the hearing. *Id.* During the hearing the plaintiff amended the onset date to August 5, 2014. Tr. 42. On May 16, 2017, the ALJ issued a decision finding the plaintiff was not disabled within the meaning of the Act. Tr. 12-31. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on March 22, 2018. Tr. 1-3. Thereafter, the plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

## **LEGAL STANDARD**

### I. **District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] References to "Tr." are to the administrative record in this matter. Dkt No. 8.

(quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's

residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed the plaintiff's claim for benefits under the process described above.  First, the ALJ found the plaintiff met insured status requirements of the SSA through September 30, 2016. Tr. 17.  At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since August 5, 2014, the alleged onset date.  *Id.*  At step two, the ALJ found the plaintiff has the following severe impairments: obesity; bipolar disorder; attention deficit/hyperactivity disorder (ADHD) and mild degenerative changes at L4-5 and L5-S1 of the lumbar spine.

*Id.* The ALJ also found the plaintiff has the following non-severe impairments: obstructive sleep apnea; hypothyroidism; dyslipidemia; and left knee pain. Tr. 18. At step three, the ALJ found that the plaintiff's impairments, alone or in combination, did not meet or medically equal any listings impairment. *Id.*

Next, the ALJ determined the plaintiff retained the RFC to perform medium work with additional limitations Tr. 20. Specifically, he can only occasionally climb ramps and stairs, kneel and crawl, but cannot climb ladders, ropes, or scaffolds. *Id.* He can understand, remember and carry out simple and routine instructions and tasks. He cannot perform jobs with supervisory duties or jobs requiring independent decision making. *Id.* He can perform jobs with no strict production quotas and minimal changes in work routine and processes. *Id.* He can have frequent contact with supervisors, and occasional interaction with coworkers and the general public. *Id.*

At step four, the ALJ relied on the VE's testimony and found that the plaintiff was unable to perform his past relevant work as a "Collections Clerk" (DOT #241.357-010: Specific Vocational Preparation ("SVP") level of 5, with a sedentary level of exertion. Tr. 29. At step five, the ALJ considered the plaintiff's age (48 on the alleged disability onset date); high school education; ability to communicate in English; work experience; RFC; and concluded based on the VE's testimony that the plaintiff was capable of performing other work that existed in significant numbers in the national economy. Tr. 30. Specifically, the ALJ found the plaintiff could perform the following jobs: "Sweeper/Cleaner-Industrial" (DOT #389.683-010) SVP 2 (unskilled) requiring a

5

medium level of exertion; and "Linen Room Attendant" (DOT #222.387-030) SVP 2 (unskilled) requiring a medium level of exertion; and "Cart Attendant" (DOT #920.678-014 SVP 2 (unskilled) requiring a medium level of exertion. *Id.* Accordingly, the ALJ found the plaintiff was not disabled from August 5, 2014 through May 16, 2017. Tr. 31.

II. Analysis

Plaintiff argues that remand is warranted because the ALJ erred in evaluating his RFC, by failing to give controlling weight to the opinions rendered by his treating mental health clinician, Jeffrey Kashin, MD ("Dr. Kashin") in violation of the treating physician rule. Dkt No. 11 at 22. The Commissioner contends the ALJ reasonably weighed Dr. Kashin's opinions and provided good reasons in support of his determination to accord them less-than-controlling weight. Dkt. No. 17 at 6. This Court finds that remand is required because the reasons provided by the ALJ are not supported by substantial evidence.[2]

**Treating Physician Rule**

The treating physician rule requires the ALJ to give "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d. Cir 2003). The treating physician's opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78 (2d

---

[2] Plaintiff also argues remand is warranted because the ALJ erred in evaluating the consultative examiner's opinion and in evaluating his subjective complaints. The Court declines to consider these arguments having already found the ALJ's decision reversible for violating the treating physician rule.

Cir. 1999) (citations omitted).³ An ALJ who declines to give controlling weight to the medical opinion of a treating physician must consider: (i) the frequency of examination and length, nature and extent of the treatment relationship; (ii) evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the SSA's attention that tend to support or contradict the opinion. 20 C.F.R. § 404.1527 (d)(2). The ALJ "must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). However, failure "to refer explicitly to each regulatory factor in determining the weight to assign to a treating physician's opinion" does not warrant remand where the decision, in its entirety, supports the conclusion that the ALJ "conscientiously applied the substance of the treating physician rule." *Jasen v. Comm'r of Soc. Sec.*, No. 16-CV-6153P, 2017 WL 3722454, *11 (W.D.N.Y. Aug. 27, 2017); *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004) (per curiam) (If, "a searching review of the record" assures us "that the substance of the treating physician rule was not traversed," we will affirm).

Dr. Kashin authored a psychiatric evaluation of Plaintiff on June 3, 2016, finding he suffers from a severe, persistent mental illness; struggled with symptoms of

---

³ As of March 27, 2017, new regulations were effectuated regarding the treating physician rule, however, the rule remains applicable to claims filed prior to March 27, 2017. See 20 CFR §416.927; Smith v. Comm'r of Soc. Sec., 731 F.App'x. 28, 30 n.1 (2d Cir. 2018) (summary order).

7

ADHD and Depression; and had been sober for 16 months. Tr. 649-664. Dr. Kashin also authored a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination, diagnosing Plaintiff with Bipolar I Disorder; Alcohol Use in Remission; Hypothyroidism; Dyslipidemia; and Degenerative Joint Disease. Tr. 748-49. Dr. Kashin opined Plaintiff would be moderately limited in his ability to walk, stand, sit, lift, carry, push, pull, bend, climb and in his ability to carry out simple instructions. Tr. 749. The doctor also found Plaintiff would be very limited in his ability to understand and remember instructions, maintain attention and concentration, make simple decisions, and function at a consistent pace within a work setting. *Id.*

Dr. Kashin completed a Mental Residual Functional Capacity Questionnaire on March 30, 2017, concluding that due to Plaintiff's mental impairments, he would be unable to meet competitive standards for completing a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 752. He also found Plaintiff would be seriously limited, but not precluded from: remembering work-like procedures; sustaining an ordinary routine without special supervision; working in coordination with or in close proximity to others without being unduly distracted; making simple work-related decisions; performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; responding appropriately to changes in a routine work setting; dealing with normal work stress; and

8

being aware of normal hazards and taking appropriate precautions. Additionally, Dr. Kashin opined that Plaintiff's impairments and treatments would cause him to be absent more than four days per month. Tr. 754.

This Court finds that the reasons provided by the ALJ in support of his decision to afford less-than-controlling weight to Dr. Kashin's opinions, unsupported by substantial evidence. *Chance v. Comm'r of Soc. Sec.*, NO. 18-CV-342P, 2019 WL 4564116, *6 (W.D.N.Y. Sept. 20, 2019) (citing *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019). Specifically, the ALJ reasoned, "there is no basis for [Dr. Kashin's] opinion that the plaintiff would likely miss four days of work per month due to his impairment, as the records indicate that the claimant was doing well on his medications, which remained the same for a period of time." Tr. 29 (referencing Tr. 754). Here, the ALJ failed to cite to any record evidence in support of his claim, nor to any record evidence that contradicts Dr. Kashin's opinion. The ALJ also reasoned that Dr. Kashin's first opinion on Plaintiff's mental limitations was inconsistent with medical evidence "showing rather benign mental status examinations" and that the second opinion was "somewhat consistent with the medical evidence of record as a whole," again failing to cite to any medical evidence in support of his finding. *See Cordero v. Colvin*, No. 1:15-CV-00345(MAT), 2016 WL 6829646, at *3 (W.D.N.Y. Nov. 21, 2016) ("[T]he ALJ stated that [the treating physician's] opinion was 'without substantial support from the other evidence of record, which obviously renders it less persuasive.' The ALJ did not identify, much less allude to, which evidence of record failed to offer 'substantial support' for [the treating physician's] opinion. This was error, and it precludes the Court

from conducting a meaningful review of whether the ALJ's decision is supported by substantial evidence.") (internal citations omitted).

The ALJ also improperly generalized Plaintiff's periods of stabilization and improvement as a basis for negating Dr. Kashin's opinion. "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding the claimant is capable of working." *Estrella*, 925 F.3d at *97 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (citation omitted). Although the ALJ acknowledged that Dr. Kashin was Plaintiff's treating psychiatrist for a year, he did not discuss the frequency of Plaintiff's treatment, which supports Dr. Kashin's opinion where Plaintiff attends bi-weekly appointments for counseling and psychiatric appointments every three months. Further, the ALJ failed to reconcile Dr. Kashin's opinion that Plaintiff would be unable to meet competitive standards for completing a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 752. Notably, Dr. Kashin's opinions are not inconsistent with the consultative psychiatric examiner's opinion, Janine Ippolito, PsyD. ("Dr. Ippolito"), that "[Plaintiff's] mental health condition may affect his abilities on a daily basis," which the ALJ accorded "great weight." Tr. 28 (citing Exhibit B11F). Finally, this error is not harmless because if credited, according to the VE's testimony Plaintiff would be unemployable if he missed more than two days per month repetitively. Tr. 90.

10

Accordingly, this matter is remanded for the ALJ to re-evaluate Dr. Kashin's opinions and if the ALJ decides to afford less-than-controlling weight to the treating physician's opinion again, the ALJ should cite specifically to relevant medical and non-medical evidence in this case that contradicts the opinion. *See Damiano v. Comm'r of Soc. Sec.*, No. 15-CV-1074 (WFK), 2019 WL 2330853, at *9 (E.D.N.Y. 2019).

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 11) is GRANTED to the extent that this matter is remanded for further proceedings consistent with this Decision and Order. Defendant's Motion for Judgement on the Pleadings (Dkt. No. 17) is DENIED. The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED: Buffalo, New York
October 4, 2019

*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.
United States Magistrate Judge**